In re Peter J. JACOBS, Debtor.

The CHASE MANHATTAN BANK, N.A., Plaintiff,

v.

Peter J. JACOBS, and Marion R. Jacobs, Defendants.

Bankruptcy No. 83–00098–P7.
Adv. No. C83–1598–P7.

United States Bankruptcy Court, S.D. California.

April 17, 1985.

David R. Markham, Sullivan, McWilliams, Markham, Lewin & Disner, San Diego, Cal., for plaintiff.

Robert L. Rentto, Stutz, Rentto, Gallagher & Artiano, San Diego, Cal., for defendants.

## MEMORANDUM DECISION

LOUISE DE CARL MALUGEN, Bankruptcy Judge.

### FACTS

Chase Manhattan Bank ("Chase") filed an amended complaint for a declaratory judgment that the debtor's residence is community property and, consequently, property of the estate. Debtor Peter Jacobs has moved for summary judgment on the amended complaint.

Chase was awarded a $441,266.72 judgment against debtor and in 1981 obtained a judgment lien against the family residence of debtor and his non-debtor spouse, Marion Jacobs, located at 12352 Escala Drive, Rancho Bernardo, California. Peter and Marion Jacobs acquired title to the residence in 1979 as joint tenants.

The debtor claims that he and Marion Jacobs agreed that the residence was to remain the separate property of Marion Jacobs. In that case, the residence would not be property of the estate and would be beyond the reach of debtor's creditors, including Chase.

Alternatively, debtor argues that, because title to the residence is in joint tenancy, he owns only an undivided one-half interest in the residence, with Marion Jacobs holding the remaining one-half interest as her separate property. Debtor's one-half interest would not be subject to Chase's lien because no equity would remain once the amount owing on the first deed of trust and the amount of debtor's homestead exemption are subtracted from his interest.

Not unexpectedly, Chase counters that debtor and Marion Jacobs had an understanding that, notwithstanding the joint tenancy form of title, the residence was held as community property. Chase relies on the Jacobs' use of the residence for community purposes, listing of debtor's salary on the loan application, and use of community funds to make mortgage payments while debtor was employed to establish such an understanding.

The Jacobs purchased the property for $152,000 with the aid of a $121,600 loan. Marion Jacobs contributed a down payment of $30,400, $19,197.52 for improvements, and fifty-five of sixty-six mortgage payments from her separate property. Marion Jacobs made the above contributions from a $75,000 inheritance from her uncle and an inheritance from her father (for which distribution began in 1979 though the estate was not finally settled until 1984). Eleven of sixty-six mortgage payments were made from an account into which debtor deposited his earnings of $6,000 per month while he was employed as president of Cal-Ema-

non Restaurant Corporation, which operated a Burger King franchise, between August 1979 and October 1981.

## DISCUSSION

### A. *Declaratory Judgment*

■ A declaratory judgment under 28 U.S.C. § 2201 may be rendered "if the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality...." *Maryland Casualty v. Pacific Oil & Coal*, 312 U.S. 270, 272–73, 61 S.Ct. 510, 511–12, 85 L.Ed. 826 (1941). An actual controversy exists between Chase and debtor as to the debtor's interest in the residence, against which Chase has a lien. The necessity of determining whether and to what extent the residence is property of the debtor's estate in order to facilitate administration of the estate gives the controversy sufficient immediacy to be ripe for declaratory judgment.

■ Because the debtor's interest in property is subject to dispute, this matter is a core proceeding within 28 U.S.C. § 157 and appropriate for resolution by the Bankruptcy Court.

### B. *Summary Judgment*

Summary judgment should be granted only if, viewing all of the evidence in the light most favorable to the non-moving party, there are no triable issues of fact. In addition, the Court should draw all inferences favorable to the non-moving party in deciding the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*); *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 624–25 (9th Cir.1977).

Normally, judgment should be denied if the facts are peculiarly within the knowledge of the moving party. *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (2nd Cir. 1968) (*en banc*). However, the opposing party must specify which facts it cannot ascertain and the reason for its inability to do so. *Robin Construction Co. v. United States*, 345 F.2d 610, 613–15 (3rd Cir.1965). Chase has not done so in this case. The discovery cut-off date has passed, and Chase has not requested additional discovery.

■ It is a question of fact whether property held in joint tenancy is community property. *Gudelj v. Gudelj*, 41 Cal.2d 202, 212, 259 P.2d 656, 662 (1953); *In re Marriage of Mahone*, 123 Cal.App.3d 17, 23, 176 Cal.Rptr. 274, 277 (1981); *In re Marriage of Aufmuth*, 89 Cal.App.3d 446, 455, 152 Cal.Rptr. 668, 673 (1979) (disapproved on other grounds in *Lucas, infra* p. 573). However, Chase must present evidence of specific facts which tend to rebut the joint tenancy presumption or summary judgment will be granted. *See* Fed.R.Civ.P. 56; *Gudelj*, 41 Cal.2d at 212, 259 P.2d at 663; *In re Miles*, 35 B.R. 52, 53 (Bankr.E.D.Cal. 1983). "... [A] party who resists summary judgment cannot hold back his evidence until the time of trial." *Robin Construction, supra* at 613. "A summary judgment is proper where a trial would serve no useful purpose." *Miller v. Western Board of Adjusters*, 427 F.2d 175, 177 (9th Cir. 1970).

### C. *Debtor's Equity in the Property*

In *Schoenfeld v. Norberg*, 11 Cal.App.3d 755, 90 Cal.Rptr. 47 (1970), the trial court had ordered the sale of a family residence taken in joint tenancy title without first determining whether the husband and wife actually held the property as joint tenancy or community property. If held as community property, the entire value of the residence would have been subject to execution to satisfy the lien. On the other hand, if held in joint tenancy, only the judgment debtor's one-half interest would have been subject to execution and then only if the debtor had any equity in his interest. For purposes of determining the judgment debtor's equity interest in joint tenancy property, the Court of Appeal held that the full amount of all encumbrances against the property and the homestead exemption must be subtracted from the fair market

value of the debtor's one-half interest. The matter was reversed and remanded to allow the trial court to determine whether the residence was held as joint tenancy or community property before ordering the property sold to satisfy the judgment. *See also Miles,* 35 B.R. 52.

Chase has submitted an M.A.I. appraisal that values the residence at $181,000 as of November 9, 1981. Chase asserts that the house is now worth $185,000 to $200,000, based on recent sales prices for comparable homes in the area. Assuming a value of $200,000 and joint tenancy title, debtor's one-half interest in the residence is worth $100,000. No equity remains after deducting the $117,900 owing on the first deed of trust and $45,000 homestead exemption. Thus, Chase must establish community property title to the residence to prevail in the action. All community property (except the earnings of the non-debtor spouse) is liable for the contractual debts of either spouse and is property of the estate. Cal. Civ.Code § 5120.110 (West Supp.1985); 11 U.S.C. § 541(a)(2) (1979).

D. *Presumptions of Title*

State law determines the characterization of the residence as joint tenancy or community property. *See Hannah v. Swift,* 61 F.2d 307 (9th Cir.1932). Property acquired during marriage is presumed to be community property. Cal.Civ.Code § 5110 (West Supp.1985); *In re Marriage of Lucas,* 27 Cal.3d 808, 814, 166 Cal.Rptr. 853, 857, 614 P.2d 285 (1980).[1] However, the general community property presumption is rebutted by the affirmative act of specifying joint tenancy title in the deed. *Lucas,* 27 Cal.3d at 814-15, 614 P.2d at 288, 166 Cal.Rptr. at 857; *In re Marriage of*

*Cademartori,* 119 Cal.App.3d 970, 974-75, 174 Cal.Rptr. 292, 294-95 (1981); *Miles,* 35 B.R. at 53. Property taken in joint tenancy title is presumed to be held as joint tenancy property, with each spouse owning an undivided one-half interest.[2] *Id.* This form of title presumption is not conclusive. *Gudelj,* 41 Cal.2d at 212, 259 P.2d at 662; *In re Marriage of Stitt,* 147 Cal.App.3d 579, 585, 195 Cal.Rptr. 172, 175 (1983).

The party challenging the presumption has the burden of proof rather than merely the burden of producing evidence. *Hansford v. Lassar,* 53 Cal.App.3d 364, 371-72, 125 Cal.Rptr. 804, 808 (1975) (disapproved on other grounds in *Liodas v. Sahadi,* 19 Cal.3d 278, 562 P.2d 316, 137 Cal.Rptr. 635 (1977)). The party opposing the presumption must prove that the property is not held in joint tenancy but as community property. *Id.* The joint tenancy presumption may be rebutted by showing, by a preponderance of the evidence, an agreement or understanding of the husband and wife to hold the property in some other form of title; here, as community property. *Lucas,* 27 Cal.3d at 815, 614 P.2d at 289, 166 Cal.Rptr. at 857; *Cademartori,* 119 Cal.App.3d at 973-76, 174 Cal.Rptr. at 293-95. Such an understanding may also be inferred from the conduct of the parties in relation to the property. *Oak Knoll Broadcasting Corp. v. Hudgings,* 275 Cal.App.2d 563, 568, 80 Cal.Rptr. 175, 178 (1969); *Hansford,* 53 Cal.App.3d at 373, 125 Cal.Rptr. at 809.

Chase must establish the existence of a question of fact as to whether the form of title presumption has been rebutted with evidence of an agreement between the Jacobs to hold the residence as community property. Chase has submitted no direct

---

**1.** The facts of *Lucas* are remarkably similar to those of the instant case. The husband and wife bought a family residence during marriage with a down payment from the wife's separate property and the proceeds of a loan, which they both assumed. Title was taken in joint tenancy. Improvements were made using separate funds of the wife while the community made principal and interest payments on the mortgage and paid taxes. The *Lucas* court discussed the interests of the community and the wife for purposes of

division at divorce, but remanded the case for further factual findings.

**2.** The presumption in Section 5110 of community property from joint tenancy title on dissolution is inapplicable where, as here, the parties remain married and a creditor is challenging the joint tenancy title. *Hansford v. Lassar,* 53 Cal.App.3d 364, 371, 125 Cal.Rptr. 804, 808 (1975); *Miles,* 35 B.R. at 53.

evidence of such an agreement but relies on the conduct of the Jacobs with respect to the residence to establish the existence of an agreement.

### E. *Evidence of an Agreement*

 Construing all evidence in a light most favorable to Chase, Chase has adduced the following evidence of an agreement. First, the Jacobs made mortgage payments from a bank account in which Marion Jacob's separate property and debtor's earnings were commingled whenever debtor had earnings. However, case law holds that tracing contributions to a community property source alone is insufficient to rebut the joint tenancy presumption, absent an agreement that the community is to retain an interest in the property to the extent of its contribution or that the property is to be held in its entirety as community property. *Lucas*, 27 Cal.3d at 815, 614 P.2d at 288–89, 166 Cal. Rptr. at 857; *Gudelj*, 41 Cal.2d at 212, 259 P.2d at 662–63; *Mahone*, 123 Cal.App.3d at 23, 176 Cal.Rptr. at 277. Moreover, debtor's contributions of community property to acquire or improve the separate property of his wife are presumed to be a gift. Such contributions will not be reimbursed absent an agreement to the contrary. *Lucas*, 27 Cal.3d at 816–17, 614 P.2d at 289–90, 166 Cal.Rptr. at 858–59; *In re Marriage of Gonzales*, 116 Cal.App.3d 556, 558–60, 564–65, 172 Cal.Rptr. 179, 180–81, 183–84 (1981).

Second, debtor's community property earnings were listed on the loan application, the proceeds of which were used, in part, to acquire the residence. Debtor signed the loan application. On the loan analysis form, the lender listed debtor's salary in a box labelled "stable income." But on that part of the form captioned "employment stability," the lender noted that the debtor's job was "new." Chase does not contend that the lender relied on these statements in extending the loan nor does it adduce any evidence of the lender's reliance by way of declaration or otherwise. Since reliance by the lender was not raised by Chase, the Court need not consider the applicability of case law concerning the affect of the intent of the lender on the joint tenancy presumption.

Finally, as proof of an agreement to hold the residence as community property, Chase urges that the debtor and his wife refer to the residence as "our house" in their declarations and used the home for community purposes. Although such evidence might support an inference that the property is being held as community, it is not inconsistent with an agreement to hold the property as joint tenants.

 This Court holds that the totality of the evidence presented by Chase is insufficient to create an issue of fact as to the existence of an agreement or understanding to hold the residence as community property. The evidence proffered by Chase consists solely of a declaration by Chase's attorney, a 1981 appraisal of the property, the Jacobs' loan application, and the Jacobs' response to Chase's Request for Production of Bank Records, which shows which bank accounts checks used to make mortgage payments were drawn on. Such evidence does not provide any basis for inferring the existence of an agreement to hold the residence as community property. *Cf. Lucas*, 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853; *Cadermartori*, 119 Cal. App.3d 970, 174 Cal.Rptr. 292.

Summary judgment for debtor on the complaint is granted. Debtor's assertion that the property is the separate property of Marion Jacobs need not be considered.